**Affirmed and Opinion filed August 6, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00573-CR

### JORDAN MICHAEL BURDICK, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2
Galveston County, Texas
Trial Court Cause No. MD-0331762**

## O P I N I O N

In this appeal from a conviction for driving while intoxicated, we consider five issues, each arising out of the State's failure—and in one instance, its refusal—to turn over evidence that appellant requested during discovery. Finding no reversible error, we overrule each issue and affirm the trial court's judgment.

## BACKGROUND

Appellant was pulled over late at night after an officer observed him swerve without warning and narrowly miss a parked car. When the officer asked for appellant's license and proof of insurance, appellant gave an unusual response, saying that he, as an individual, did not have an expiration date. Appellant fumbled through his documents, dropping some of them on his floorboard. According to the officer, appellant was slurring his speech, and he had "extremely watery bloodshot eyes and droopy eyelids." The officer also detected "a strong odor of alcohol coming out of the vehicle."

The officer administered three field sobriety tests, which were all recorded on a dash cam video. The officer identified six out of six possible clues of intoxication on the horizontal gaze nystagmus test. When the officer asked for appellant to perform the walk and turn test, appellant claimed that he suffered from bad knees, but that he was still capable of performing the test. Appellant stumbled through the test, displaying seven out of eight clues. Appellant performed poorly on the one-legged stand test as well, displaying four out of four clues. Based on all of the signs of intoxication, the officer arrested appellant and transferred him to the county jail for processing.

The date of arrest was January 16, 2013. Two weeks later, on January 30, appellant sent a letter to the district attorney's office, requesting the preservation of all recordings that depicted him on the date of the alleged offense. In addition to the dash cam video, appellant specifically requested the booking and intake videos at the county jail. The State turned over the dash cam video, but no other recordings.

Appellant moved for additional discovery, and in October of 2013, the trial court granted his motion and ordered the State to turn over all "sally port videos,

booking videos, and jail videos" that depicted appellant in this case. Still, no other recordings were ever produced.

Appellant moved to dismiss the case, claiming that the State's failure to produce the other videos was prejudicial and in violation of *Brady v. Maryland*. During a pretrial hearing on that motion, appellant testified that he walked normally into the booking and intake area on the night of his arrest, without ever stumbling and without the assistance of another person. Appellant asserted that if the other videos had been produced, they would show that he had not lost the normal use of his mental and physical faculties.

The State called a representative from the jail, who testified that the jail has two video systems in the booking and intake area. One of the systems stores videos for four days, whereas the other system stores videos for seventeen days. At the end of those time periods, the videos are taped over.

The representative explained that the jail does not have an official policy for keeping the videos in the booking and intake area. Instead, the retention period is determined by presets in the video equipment. The representative testified that the video from the seventeen-day system could have been preserved by the time appellant had made his request. However, appellant sent his request to the district attorney's office, rather than the jail, and the representative claimed that he never received timely notice of a request. Consequently, the videos from both systems were lost. The trial court denied the motion to dismiss.

Shortly before trial, the State sent appellant a "File Memo / *Brady* Notice," claiming that it had obtained the arresting officer's personnel file from another police department where the officer had previously been employed. The State asserted in this notice that the officer's employment with that other department had been terminated following an administrative investigation. The State did not

3

apprise appellant of the reasons for that investigation. However, the State advised appellant that, upon request, it would supply the officer's personnel file to the trial court for an in camera inspection to determine whether the file qualified as either *Brady* or *Giglio* material.

Both sides agreed to an in camera inspection. In a written order, the court answered that it "has reviewed the provided material and has determined that none of the material constitutes *Brady* or *Giglio* material in the instant case." The State accordingly refused to turn over the personnel file. Appellant moved for a continuance to independently investigate the officer, but the trial court denied that motion.

During the trial on the merits, the officer was the State's only witness. The officer published his dash cam video for the benefit of the jury, and he opined that appellant was intoxicated on the night of the traffic stop. No evidence was ever presented regarding the alcohol concentration in appellant's blood, breath, or urine.

Testifying in his own defense, appellant admitted that he had consumed three beers on the night in question, but he insisted that he was not intoxicated. Appellant explained that his coordination, or lack thereof, was the product of fatigue and previous bodily injury. Appellant testified that he was tired during his interaction with the officer because he had been awake for many hours. He also testified that he performed poorly during the field sobriety tests because doctors had operated on his knees three times in the past, and those surgeries affected his balance. Appellant also stated that the cold, January weather was another factor that negatively impacted his knees. The jury rejected these explanations and convicted appellant as charged.

After the verdict, but before the trial court's plenary power had expired, appellant received the officer's personnel file from his previous employer.

Appellant filed a motion for new trial, claiming that he had reason to believe that this file contained more documents than what the State had submitted to the trial court for an in camera inspection. Appellant attached a sample of the documents to his motion, and the attachments revealed, among other things, that the officer had been terminated because he used his authority to harass a young woman, with whom he apparently had a prior romantic relationship. Appellant argued that this newly available evidence was material and would have been used to impeach the officer. By written order, the trial court denied appellant's motion for new trial, without ever having conducted a hearing.

## MOTION FOR NEW TRIAL

We consider appellant's first and second issues together because they are interrelated. In his first issue, appellant argues that the trial court abused its discretion by disposing of his motion for new trial without the benefit of a hearing. In his second issue, he argues that the trial court abused its discretion by denying the motion itself. We address these points in reverse order.

### I.    Denial of the Motion

A trial court's ruling on a motion for new trial is reviewed for an abuse of discretion. *See Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). The test for an abuse of discretion is whether the trial court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

To be entitled to a new trial on the basis of newly discovered or newly available evidence, the defendant must show:

> (1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

(2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

(3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

(4) the new evidence is probably true and will probably bring about a different result in a new trial.

*See Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014). We need only focus on the final two prongs of this test, because they are dispositive.

Appellant argued that he was entitled to a new trial because the newly discovered evidence showed that the officer was not credible. The proof attached to appellant's motion addressed a wide variety of subjects. Several documents revealed that the officer had been reprimanded by his previous employers for conduct unbecoming of an officer. In one instance, which actually resulted in termination, the officer abused his authority by threatening to arrest a young woman whom he previously had dated. In addition to this evidence of professional misconduct, appellant also attached a copy of the officer's college transcript, which showed an unremarkable, if not a poor, academic record.

Appellant asserted elsewhere in his motion that the officer had a history of breaking the law and of selectively enforcing DWI laws. The only proof offered in support of these assertions was described as an "audio recording available for review." There is no indication that appellant supplied that audio recording to the trial court. Nor has that recording been included in our record on appeal.

Even if we assumed the veracity of appellant's claims, the evidence shows, at most, that the officer has a blemished or imperfect background. The State did not acknowledge this background during trial. To the contrary, the State portrayed the officer as an exemplary public servant with a history of commendations.

We do not doubt that the newly discovered evidence was "possibly useful to the defense," *see Giglio v. United States*, 405 U.S. 150, 154 (1972), but we cannot agree that the evidence would have materially altered the outcome of the trial had it been made available. Appellant admitted on the stand that he consumed three beers on the night of his arrest, and the video evidence clearly showed that he was impaired. Appellant argued that the reason for his impairment was his fatigue and bad knees, and not his consumption of alcohol, but the jury rejected that defense and found that he was intoxicated. There is no reasonable probability that the newly discovered evidence, which merely impeached the officer's history of professionalism, would have changed the jury's assessment of appellant's intoxication. *Cf. Boyett v. State*, 692 S.W.2d 512, 517 (Tex. Crim. App. 1985) (newly discovered impeachment evidence against an officer did not warrant a new trial where the evidence was immaterial because it did not advance a defensive theory); *Ramirez v. State*, 830 S.W.2d 827, 829 n.1 (Tex. App.—Corpus Christi 1992, no pet.) (newly discovered impeachment evidence against an officer did not warrant a new trial where the evidence "approache[d] insignificance" because it merely showed that, on an unrelated occasion, the officer missed a day of work under a false pretense to spend some time with his girlfriend); *see also Saldivar v. State*, 980 S.W.2d 475, 485–87 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (newly discovered impeachment evidence regarding a witness's criminal history was not material because the State's case was strong and the defense was able to impeach the witness with her prior inconsistent statement).

The trial court did not abuse its discretion by denying appellant's motion for new trial.

## II. Failure to Conduct a Hearing

We review the trial court's failure to conduct a hearing on a motion for new trial under the same standard as before: an abuse of discretion. *See Martinez v. State*, 74 S.W.3d 19, 21–22 (Tex. Crim. App. 2002).

The purpose of the hearing is to decide whether the cause should be retried and to prepare a record for presenting issues on appeal in the event the motion is denied. *See Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). Although the hearing on a motion for new trial is a critical stage, the right to such a hearing is not absolute. *See Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). A hearing is not required when matters raised in the motion are subject to being determined from the record. *See Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993).

If a defendant has raised matters not determinable from the record, a trial court is not required to conduct a hearing unless the defendant further establishes the existence of "reasonable grounds" showing that he "could be entitled to relief." *Id.* This reasonableness requirement serves to prevent "fishing expeditions." *Id.* The defendant need not establish a prima facie case for a new trial, nor must his proof reflect every component legally required to establish his entitlement to a new trial. *See Smith*, 286 S.W.3d at 339. It is sufficient if a fair reading of the proof gives rise to reasonable grounds in support of the defendant's claim. *Id.*

As discussed above, appellant moved for a new trial, claiming that the newly discovered evidence would have been used to impeach the officer. Appellant argued that this impeachment evidence was critical because the officer was the State's only witness and, therefore, attacking his credibility was paramount.

8

The proof attached to appellant's motion consisted of documents from the officer's personnel file and academic record. Appellant indicates in his brief that, had a hearing been conducted on his motion, he would have been able to develop additional details regarding these documents. Appellant focuses specifically on four allegations: (1) the officer had selectively enforced DWI laws; (2) the officer had broken other laws himself; (3) the officer was untruthful about his training and education; and (4) the officer had been fired and reprimanded in previous law enforcement positions. Appellant also argues that a hearing would have allowed the trial court to listen to an audio recording that supported some of these allegations.

At best, a hearing would have established that appellant had an evidentiary basis for challenging the officer's credibility. However, the impeachment value from that evidence would have been limited to attacking the officer's history of professionalism. The impeachment evidence would not have negated the officer's ability to assess appellant's intoxication on the night of the arrest. The trial court could have reasonably concluded that the newly discovered impeachment evidence was not material, and therefore, that appellant had not established reasonable grounds for granting a new trial. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (holding that a trial court could deny a hearing on a motion for new trial if it could reasonably conclude that the newly discovered evidence attached to the motion was not compelling enough to overcome the strength of the State's case).

The trial court did not abuse its discretion by denying appellant's motion for new trial without the benefit of a hearing.

## MOTION FOR CONTINUANCE

In his third issue, appellant contends that the trial court abused its discretion by denying his motion for continuance. As stated earlier, appellant filed his motion after the trial court determined, following an in camera inspection, that the officer's personnel file did not qualify as either *Brady* or *Giglio* material. Appellant requested additional time to investigate the officer and obtain his personnel file because he believed that new evidence existed regarding the officer.

A defendant must satisfy a two-prong test to show reversible error predicated on the denial of a pretrial motion for continuance. *See Gonzales v. State,* 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). First, the defendant must show that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* (citing George E. Dix & Robert O. Dawson, 42 Texas Practice: Criminal Practice and Procedure § 28.56 (2d ed. 2001)). Second, the defendant must show that he was actually prejudiced by the denial of his motion. *Id.* This standard is met if the defendant can establish "with considerable specificity [that he] was harmed by the absence of more preparation time than he actually had." *Id.* at 842.

There is no need to address the first prong of this test because appellant cannot show that he was actually prejudiced. After the trial was over, appellant received a copy of the officer's personnel file, which is what he sought to discover had the continuance been granted. In his motion for new trial, appellant asserted that he had reason to believe that his copy of the officer's personnel file contained more information than what the trial court had reviewed during its in camera inspection. Appellant argues now that he would have used this greater file "to rebut the false impression that [the officer] was a credible, decorated, police officer."

However, even if the evidence were admissible for the limited purpose of impeachment, there is no reasonable likelihood that the outcome of trial would have been different, as we explained in appellant's previous two issues.

Because appellant has not shown that he was harmed by the absence of additional preparation time than he actually had, we conclude that the trial court did not reversibly err by denying the motion for continuance.

## MOTION TO DISMISS

In his fourth issue, appellant complains about the denial of his motion to dismiss. Appellant predicates this issue on the State's failure to preserve the booking and intake videos at the county jail, which he believes were exculpatory.

When reviewing a trial court's decision on a motion to dismiss, we apply a bifurcated standard, giving almost total deference to the trial court's findings of fact that are supported by the record, as well as any mixed questions of law and fact that rely upon the credibility of witnesses. *See State v. Dinur*, 383 S.W.3d 695, 699 (Tex. App.—Houston [14th Dist.] 2012, no pet.). For pure questions of law or mixed questions that do not depend on credibility determinations, our review is de novo. *See State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011).

The United States Supreme Court has explained that there is a difference between "material exculpatory evidence" and "potentially useful evidence," and that difference informs our analysis when deciding whether the State's failure to disclose or preserve evidence violates a defendant's guarantee of due process of law. *See Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (per curiam). With material exculpatory evidence, a due process violation occurs whenever the State suppresses or fails to disclose such evidence, regardless of whether the State acted in bad faith. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). With potentially

useful evidence, however, the State's failure to preserve such evidence does not amount to a due process violation unless the defendant can show bad faith on the part of the State. *See Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). Potentially useful evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57.

## I.     The videos were not material exculpatory evidence.

Appellant argues that he is not required to show bad faith in this case because the booking and intake videos were material exculpatory evidence. Appellant bases this argument on his uncontroverted testimony during the hearing on the motion to dismiss that he walked into the county jail normally and without the assistance of another.

To meet the standard of constitutional materiality, the evidence must possess "an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *See California v. Trombetta*, 467 U.S. 479, 489 (1984). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

We agree that videos of appellant walking normally through the booking and intake area could have been useful to the defense. However, the exculpatory value

of those videos would have been slight when compared to the body of inculpatory evidence that the State was able to produce. There was compelling evidence that appellant was impaired at the time of the traffic stop, and this evidence consisted of both live testimony from the officer and video evidence of appellant failing his field sobriety tests. Videos recorded after the field sobriety tests showing appellant walking normally would not be sufficient to undermine confidence in the outcome. Those videos would "cut both ways" because a reasonable juror could still conclude that appellant failed the field sobriety tests because of his intoxication, rather than his bad knees. *See Barre v. State*, 826 S.W.2d 722, 725 (Tex. App.— Houston [14th Dist.] 1992, pet. ref'd). Appellant did not show a reasonable probability that the outcome of the trial would have been different, but for the State's failure to preserve the booking and intake videos. *Cf. Higginbotham v. State*, 416 S.W.3d 921, 926–27 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (missing video from the scene, which had slight exculpatory value, was not material where video taken at the police station showed that the defendant had failed his field sobriety tests); *Chandler v. State*, 278 S.W.3d 70, 74–75 (Tex. App.—Texarkana 2009, no pet.) (defendant charged with assaulting a correctional officer could not establish that lost jailhouse video was favorable where "the only evidence concerning the video is that it did not clearly depict the confrontation and did not assist in determining what occurred").

## II.   Appellant did not carry his burden under *Youngblood*.

We believe that this case is governed by the standard set forth in *Youngblood* involving the destruction of potentially useful evidence. Under that standard, appellant was required to demonstrate that the State acted in bad faith by failing to preserve his requested videos. "[B]ad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the

defendant from obtaining evidence that might be useful." *Ex parte Napper*, 322 S.W.3d 202, 238 (Tex. Crim. App. 2010). A showing of negligence does not qualify as bad faith. *See Youngblood*, 488 U.S. at 58.

Here, appellant contends that the State acted in bad faith because the district attorney's office received a written request to preserve the videos, but it apparently did not forward that request to the county jail. This argument is insufficient. As the United States Supreme Court explained in *Fisher*, there has never been a holding or suggestion that the existence of a pending discovery request eliminates the necessity of showing bad faith whenever the State happens to destroy potentially useful evidence. *See Fisher*, 540 U.S. at 548. To create such a per se rule would negate the very purpose of the bad faith requirement, which is to limit the State's obligation to preserve evidence "to reasonable grounds" and only in those cases "where the interests of justice most clearly require it." *Id.* (citing *Youngblood*, 488 U.S. at 58).

Outside the pending discovery request, appellant did not produce any evidence of bad faith. The representative from the jail testified that the videos were lost because they were taped over after seventeen days. The representative also explained that the overwriting process was built into the video equipment and that there was not an official policy from the jail regarding the handling of old tapes. There was no indication of personal animus or of a conscious disregard for appellant's rights. The trial court was free to conclude that the State had not acted in bad faith.

In a related argument, appellant contends that a finding of bad faith should have been made from the State's noncompliance with an administrative regulation. Appellant refers to the record retention schedules, which require "video of prisoners in cells or other areas of a jail or holding facility" to be retained for at

least thirty days. *See* 13 Tex. Admin. Code § 7.125(a)(5) (Record No. PS4200-17). Because the video systems in the booking and intake area did not meet this minimum standard, appellant argues that the State's destruction of evidence amounts to more than mere negligence.

Appellant did not raise the regulation as a basis for relief in his motion to dismiss. Nor was the regulation ever discussed in the hearing on the motion to dismiss. Even if we assumed that the regulation could be raised now—and assuming further that it applies to the booking and intake area of the jail—we would still conclude that the trial court did not err. The trial court could have reasonably concluded that the loss of the videos in violation of the regulation was negligent at most. *See also Youngblood*, 488 U.S. at 58 (indicating that a court should avoid a construction of the Due Process Clause that might "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution"); *Zapata v. State*, 449 S.W.3d 220, 229 (Tex. App.—San Antonio 2014, no pet.) (rejecting argument that the State's compliant destruction of evidence pursuant to a different record retention schedule amounted to a per se violation of the Due Process Clause).

The trial court did not err by denying appellant's motion to dismiss. *See Gutierrez v. State*, 419 S.W.3d 547, 551–52 (Tex. App.—San Antonio 2013, no pet.).

## JURY CHARGE

In his final issue, appellant argues that the trial court committed a charge error when it denied a requested spoliation instruction. As with his fourth issue, appellant bases this complaint on the loss of the booking and intake videos at the county jail.

15

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

Assuming without deciding that the trial court erred by denying the requested instruction, appellant is only entitled to relief if the record shows that he suffered "some harm." *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Under this standard, the harm must be actual, not merely theoretical. *Id.* We consider several factors: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) any other relevant information from the record. *Id.*

The charge was standard in this case. It asked the jury to determine whether appellant was guilty of a single count of operating a motor vehicle in a public place while he was intoxicated. The charge did not contain any instruction that the jury may make an adverse inference from the State's destruction or nonproduction of evidence, which is what appellant sought in his requested spoliation instruction.

Defense counsel raised many defensive arguments during his closing statement, and he began by focusing on the officer's credibility. Counsel argued that the dash cam video did not show appellant swerve or nearly hit a parked car, which is what the officer had claimed in his testimony. Counsel argued that the officer's lie cast his entire testimony into doubt.

Counsel then turned to appellant's performance in the field sobriety tests. Starting with the horizontal gaze nystagmus test, counsel emphasized that appellant's eyes were not clearly visible on the video. Claiming that the test was also unreliable, counsel argued that there was reasonable doubt as to appellant's

16

intoxication. As for the other two tests, counsel reiterated that appellant had bad knees, which he blamed as the cause of appellant's poor performance.

The discussion then shifted to the missing videos from the booking and intake area. Counsel emphasized that he had made a timely request for at least one of these videos from the district attorney's office. He also emphasized appellant's testimony that this video would have depicted appellant walking normally on the night of his arrest.

Knowing that the charge would not contain his requested spoliation instruction, counsel implored the jury to make an adverse inference against the State. He couched his argument in terms of reasonable doubt, which was referenced in the charge. Counsel argued as follows:

> So why didn't the DA's office present you with those videos? Presumably, they would have if the evidence contained in those videos was helpful to them, don't you think? If they thought they proved that Mr. Burdick had lost the normal use of his mental and physical faculties, they would have shown you those videos.
>
> So what can we conclude from that? What—those videos must have shown something pretty favorable to Mr. Burdick, wouldn't you say? And the fact that the DA's office went to such lengths to make sure they would never see the light of day . . . . You better believe that's reasonable doubt.

The State's response to this line of argument was minimal. The State advised the jury that it should not accept this "nonsense" theory that there was a statewide conspiracy against appellant. Focusing instead on the evidence that was admitted, the State argued that this was "a common sense trial," with overwhelming proof of appellant's intoxication.

And indeed, there was overwhelming proof. Appellant admitted that he had consumed three beers on the night of his arrest. The evidence revealed that

17

appellant had bloodshot eyes, that he was slurring his speech, or that an odor of alcohol was coming out of his vehicle. The dash cam video also clearly showed that appellant was impaired during his attempt of the field sobriety tests.

Although we may not conduct a sufficiency-type analysis when reviewing the existence of harm under *Almanza*, we may examine the quality of the defensive evidence. *See Cornet v. State*, 417 S.W.3d 446, 453 (Tex. Crim. App. 2013). Here, appellant's only explanations for his impairment—fatigue and bad knees—were not very strong. It is not clear to this court how appellant's bad knees could have affected his performance during the horizontal gaze nystagmus test. Assuming that fatigue may have had an impact, there is no evidence that appellant complained of fatigue at any point during the traffic stop.

As for the other field sobriety tests, appellant stated on the dash cam video that he believed he was capable of completing the tests, despite his bad knees. At that time, appellant was in the best position to know his own limitations. The officer did not pressure or coerce appellant into proceeding with the tests. Even though he claimed that he could perform the tests, appellant stumbled through them, displaying multiple clues of intoxication.

Altogether, the State put on a compelling case. Against that backdrop of overwhelming evidence, the jury had an opportunity to give effect to appellant's spoliation claim. The jury heard testimony that appellant walked normally through the jail. The jury heard additional testimony that a request had been made for video evidence from the jail, which purported to prove that appellant had walked normally. Finally, during closing arguments, the jury was invited to conclude that the State had destroyed that video evidence because it would have favored the defense. Yet the jury still found that appellant was intoxicated. Based on the charge, evidence, and arguments of counsel, the record strongly indicates that the

jury considered and rejected appellant's plea for an adverse inference. We therefore conclude that appellant did not suffer harm from any error in the denial of his requested spoliation instruction. *See id.* at 454 (concluding that error in denying a defensive instruction was harmless where the defensive theory was discussed during closing arguments and the record indicated that the jury rejected it); *see also Erickson v. State*, 13 S.W.3d 850, 852 (Tex. App.—Austin 2000, pet. ref'd) (holding that any error in failing to narrow the definition of "intoxicated" was harmless where defense counsel advised the jury during closing arguments that it only needed to consider the defendant's use of alcohol, and not the other intoxicants mentioned in the charge); *Mena v. State*, 749 S.W.2d 639, 641–42 (Tex. App.—San Antonio 1988, pet. ref'd) (holding that any error in failing to specify that the State carried the burden of proof was harmless where both sides, during closing argument, correctly stated the law regarding the burden of proof).

## CONCLUSION

The judgment of the trial court is affirmed.

/s/     Tracy Christopher
         Justice

Panel consists of Justices Christopher, Brown, and Wise.
Publish — Tex. R. App. P. 47.2(b).