

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00022-CR

---

CHRISTOPHER RUSSELL, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the County Criminal Court No. 5
Denton County, Texas
Trial Court No. CR-2024-01274-E

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Denton County[1] jury convicted Christopher Russell of misdemeanor driving while intoxicated, and the trial court sentenced him to 120 days' incarceration, suspended that sentence, and placed Russell on twenty months' community supervision. *See* TEX. PENAL CODE ANN. § 49.04 (Supp.).

On appeal, Russell argues that (1) the trial court abused its discretion by refusing to strike an officer's testimony after she admitted to a violation of Rule 614 of the Texas Rules of Evidence (the Rule), and (2) the trial court erred in denying his motion for a new trial based on newly discovered evidence of that same violation.

Finding no error, we affirm the trial court's judgment.

## I. Evidence at Trial

Before opening statements, the trial court admonished Detective Stephanie Johnson and Officer Aaron Gillespie, both with The Colony Police Department, about "the Rule." *See* TEX CODE CRIM. PROC. ANN. art. 36.03(e) (Supp.).

Johnson testified that she noticed a vehicle stopped at a stop sign with no headlights on. She could not stop because she was responding to a different call. After she cleared that call, she returned to the location of that vehicle and saw it still had not moved. Johnson approached the vehicle and saw that the driver was not moving. She also noticed fresh damage to the driver's

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

side front door and a flat tire. In addition, Johnson saw exhaust coming from the rear of the vehicle. She called for backup, and Gillespie responded.

Johnson woke up the driver, who eventually identified himself as Russell. Johnson smelled alcohol, and Russell admitted to drinking alcohol. Johnson administered the standard field sobriety tests. Based on her observations, Johnson determined that Russell was intoxicated due to a loss of normal mental and physical faculties. After Russell refused to give his consent, Johnson applied for a warrant to draw Russell's blood. After the magistrate signed the warrant, Johnson took Russell to Carrollton Regional Medical Center, where a registered nurse drew his blood. Johnson later booked Russell into the jail.

During cross-examination, Johnson was asked about the impound report or tow sheet (a document cataloguing the contents of the vehicle). Johnson stated that Gillespie stayed behind with the vehicle to do an inventory while she transported Russell to the jail. She stated that she did not know if Gillespie ever filled out an impound report or an inventory report containing a list of any items found in Russell's vehicle.

At the conclusion of Johnson's cross-examination, the trial court recessed for lunch. During the break, Johnson asked Gillespie if he had prepared a tow sheet, and if so, where it was. After lunch, the State had obtained the tow sheet and provided a copy to Russell. Johnson admitted as much to the trial court. Upon hearing that, the trial court arranged for an attorney other than the State to represent Johnson during a hearing held outside the presence of the jury. After conferring with Johnson, the attorney informed the trial court that the only topic of

3

conversation between Johnson and Gillespie was the location of the tow sheet and that no other subjects had been discussed.

Russell urged the trial court to strike Johnson's entire testimony, not just Johnson's testimony about the tow sheet. That included the portions of Johnson's testimony not addressing the tow sheet, as well as Johnson's testimony about what she saw before Gillespie arrived. The trial court declined to strike Johnson's testimony but ordered that the State not be allowed to recall Johnson or to call Gillespie, who had not yet testified.[2] The trial court also ordered that the State not present any more testimony about the tow sheet. The trial court explicitly stated that Russell could recall Johnson if he wished. The trial court also found Johnson in contempt as required by law and fined her $56.25.[3] *See* TEX. CODE CRIM. PROC. ANN. art. 36.06 ("[T]he party violating the same shall be punished for contempt of court."); *but see* TEX. CODE CRIM. PROC. ANN. art. 36.03(e) ("The court may punish as contempt a witness who violates the admonishment provided by the court."). At the conclusion of the contempt hearing, the tow sheet was admitted without objection "for record purposes only" as exhibit 7.

The State continued its case by calling Matthew Myers and Renée Hawkins, forensic scientists with the Texas Department of Public Safety (DPS) Crime Laboratory. Myers, with the DPS crime laboratory in Garland, testified that Russell's blood alcohol concentration was 0.073. Hawkins, with the DPS crime laboratory in Austin, testified that 0.33 milligrams per liter of

---

[2]The State filed a discovery stipulation that included a notice that Gillespie did not have any body-camera footage.

[3]The trial court reasoned that Johnson's fine should be the amount of money the jury was owed for the time frame of the contempt hearing.

4

methamphetamine[4] was present in Russell's system. The State did not rely on the per se intoxication standard but instead proceeded under the theory that Russell had lost the normal use of his mental and physical faculties. Russell did not call any witnesses at either phase.

The jury found Russell guilty, and the trial court assessed a punishment of 120 days in the county jail, suspended that sentence, and placed him on community supervision for a period of twenty months.

Russell filed a motion for new trial based on newly discovered evidence, arguing that Johnson's violation of the Rule constituted newly discovered evidence. Russell argued that the tow sheet was material because it indicated that a "meth" pipe was found in the vehicle. The State had referenced during opening arguments that a "meth" pipe had been found in the passenger side of Russell's vehicle. During the hearing, Russell relied solely on argument, and the trial court denied the motion for new trial. Russell appeals.

## II.  Applicable Law

Rule 614 requires the trial court, upon a party's request, to "order witnesses excluded so that they cannot hear other witnesses' testimony." TEX. R. EVID. 614. "Or the court may do so on its own." *Id.* "The purpose of 'the Rule' is 'to prevent the testimony of one witness from influencing the testimony of another, . . . by one witness either overhearing the testimony of another witness or talking to that witness regarding his testimony.'" *Qualls v. State*, 547 S.W.3d 663, 676 (Tex. App.—Fort Worth 2018, pet. ref'd) (quoting *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989)).

---

[4]Hawkins testified that .03 milligrams per liter of amphetamines were also found in Russell's system.

5

**III.    No Error by Refusing to Strike Testimony After Admitted Violation of the Rule**

In the first issue, Russell argues that, because Johnson talked to Gillespie about the tow sheet immediately after testifying, "it cannot be assumed that Detective Johnson did not base any responses on the understanding that she would discuss and recover the tow sheet with Detective Gillespie."

We review a trial court's decision "to admit the testimony from a witness who violated the Rule" for an abuse of discretion. *Id.* at 677. "A violation of the Rule . . . is not necessarily reversible error." *Id.* "An abuse of discretion occurs when the violative testimony prejudices or harms the defendant." *Id.* The Texas Court of Criminal Appeals stated,

> Two criteria that have been suggested for determining injury or prejudice [when a witness violates the Rule] are (a) whether the witness actually conferred with or heard testimony of other witnesses, and (b) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard.

*Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (per curiam). "[T]he court's decision to allow testimony from a witness who has violated the rule is a discretionary matter." *Id.*

Even though Johnson knew that the Rule had been invoked and understood the consequences of a violation, the record does not reflect that Russell was prejudiced or harmed. *See id.* The record only reflects that "the extent of the conversation was in regard to retrieving the tow sheet, but they did not discuss the contents or . . . anything in specific in regards to the evidence of the trial." The record does not reflect that the conversations (and subsequent retrieval of the tow sheet) contradicted any defense testimony or corroborated testimony of Johnson or Gillespie. *See id.* Said differently, the conversation between Johnson and Gillespie

6

did not involve "an issue bearing on the guilt or innocence of the accused and about which they [would] later testify." *See Archer v. State*, 703 S.W.2d 664, 667 (Tex. Crim. App. 1986).

Also, neither officer testified after the improper conversation. So, the jury did not hear any testimony that could have been altered or influenced by any other testimony or any testimony that may have been corroborated by another witness's testimony based on the violation. *State v. Saylor*, 319 S.W.3d 704, 710 (Tex. App.—Dallas 2009, pet. ref'd) ("[I]t is undisputed that the nurse testified before the events in question and was not recalled to the stand, so her trial testimony could hardly have been influenced by the conversation between the prosecutor and the toxicologist, regardless of its content."). Johnson testified to her personal knowledge of her interaction with Russell. *See Bell*, 938 S.W.2d at 51. The jury was able to make their own assessment by viewing the body-camera and dash-camera footage of Russell's demeanor at the time of the stop.

Therefore, Russell has not shown that he was prejudiced or harmed by the violation. The trial court did not abuse its discretion in not striking Johnson's testimony.

We overrule Russell's first issue.

## IV.    No Newly Discovered Evidence

In his second issue, Russell argues the trial court erred by denying his motion for new trial, arguing the improper conversation between Johnson and Gillespie was newly discovered evidence.

## A.    Applicable Law

"Motions for new trial based upon newly discovered evidence are controlled by Article 40.001 . . . ." *Keeter v. State*, 74 S.W.3d 31, 36 (Tex. Crim. App. 2002).  To be entitled to a new trial on the basis of newly available evidence, the defendant must show:

> (1)    the newly discovered evidence was unknown or unavailable to the movant at the time of his trial;
>
> (2)    the movant's failure to discover or obtain the evidence was not due to a lack of diligence;
>
> (3)    the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and,
>
> (4)    the new evidence is probably true and will probably bring about a different result on another trial.

*Id.* at 36–37 (quoting *Ayers v. State*, 606 S.W.2d 936, 941 (Tex. Crim. App. 1980)); *see Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014).  Further, "[t]rial courts should not grant a new trial if the defendant's substantial rights were not affected." *State v. Herndon*, 215 S.W.3d 901, 908 (Tex. Crim. App. 2007).  "Motions for new trials on grounds of newly discovered evidence are not favored by the courts and are viewed with great caution." *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987).

"[A] trial court's denial of a motion for new trial [is reviewed] for an abuse of discretion . . . ." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017).  We will reverse the trial court "only if no reasonable view of the record could support the trial court's ruling." *Id.*  Under this standard, we "view the evidence in the light most favorable to the trial court's ruling," *id.* (citing *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018)), and we "imply findings and

8

conclusions in favor of that ruling if none are issued," *id.* at 821 (citing *Riley*, 378 S.W.3d at 459). If it supports the trial court's ruling, we must assume that the trial court disbelieved testimony supporting the appellant's claims. *See id.* "[W]hen there are two reasonable views of the evidence," "[t]he trial court's ruling is within the 'zone of reasonable disagreement,'" and we must uphold the ruling. *Id.* at 820 (quoting *Riley*, 378 S.W.3d at 457).

### B. Analysis

Russell fails to meet all the *Keeter* factors. First, the record demonstrates that Russell was aware of the improper conversation and raised the issue during trial. The trial court held a hearing that disclosed the entire contents of the conversation. *See State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017) ("Although appellee's motion for new trial discussed the video of the stop, her attorney stated at the hearing on the motion for new trial that she had reviewed the video before appellee's plea."). This shows that the issue was not unknown or unavailable at the time of trial. *See Carsner*, 444 S.W.3d at 2–3; TEX. CODE CRIM. PROC. ANN. art. 40.001 ("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial.").

Secondly, Russell concedes on appeal that the trial court would have allowed that evidence to be admitted at the original trial. The trial court specifically stated that Russell could recall Johnson. Russell did not exercise due diligence in requesting to recall Johnson or call Gillespie for the limited purpose of the violation—if he so desired during the original trial. *Arizmendi*, 519 S.W.3d at 150 ("Consequently, appellee's failure to obtain the officer's testimony at the suppression hearing was due to [his] lack of diligence.").

9

Third, the "evidence [wa]s merely impeaching" of Johnson or Gillespie. *See Lee v. State*, 186 S.W.3d 649, 660 (Tex. App.—Dallas 2006, pet. ref'd); *Strong v. State*, 138 S.W.3d 546, 556 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.). The jury was able to assess Russell's actions by viewing Johnson's body-camera and dash-camera footage. *See Burdick v. State*, 474 S.W.3d 17, 23 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("There is no reasonable probability that the newly discovered evidence, which merely impeached the officer's history of professionalism, would have changed the jury's assessment of appellant's intoxication.").

Finally, the purported new evidence probably would not bring about a different result since the issue was not material. TEX. CODE CRIM. PROC. ANN. art. 40.001; *Keeter*, 74 S.W.3d at 37 ("We characterized the requirement that the evidence be 'probably true' as an aspect of the statute's requirement that the new evidence be material." (quoting *Boyett v. State*, 692 S.W.2d 512, 516 (Tex. Crim. App. 1985)))[5]. The tow sheet was not relevant to the ultimate issue of intoxication. Contrary to Russell's argument that the State's "meth" pipe reference in its opening statement was harmful, the tow sheet did not list the "meth" pipe in its inventory, Gillespie did not testify to the contents of the inventory search, and the trial court barred any further reference to the tow sheet. Whether a "meth" pipe was found does not negate the levels of methamphetamine found in Russell's blood. The State established the elements of intoxication through firsthand observations of Johnson and the forensic analysists' subsequent analysis of Russell's blood. The jury also viewed the body-camera and dash-camera footage and

[5]The Texas Court of Criminal Appeals stated in *Keeter* that the materiality element survived even though the word "materiality" is not in the new statute. *Keeter*, 74 S.W.3d at 37 ("Nevertheless, because we construed the rule to incorporate the old statute's materiality requirement, no substantive change in the law has been effected.").

were able to make their own assessment of Russell's demeanor as well as determine the credibility of Johnson's testimony.

Therefore, the trial court did not abuse its discretion by denying Russell's motion for new trial. We overrule Russell's second issue.

## V.      Conclusion

We affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted:      July 2, 2025
Date Decided:       July 30, 2025

Do Not Publish