ACCEPTED
09-16-00495-CR
NINTH COURT OF APPEALS
BEAUMONT, TEXAS
12/13/2017 3:26 PM
CAROL ANNE HARLEY
CLERK

## NO. 09-16-00495-CR

IN THE COURT OF APPEALS FOR THE 9TH
DISTRICT OF TEXAS AT BEAUMONT

FILED IN
9th COURT OF APPEALS
BEAUMONT, TEXAS

12/13/2017 3:26:17 PM

CAROL ANNE HARLEY
Clerk

**GALEN DWAYNE BAUGUS,** *Appellant,*

**v.**

**THE STATE OF TEXAS,** *Appellee.*

*Arising from:*

**Cause No. 14-07-08281-CR**
IN THE 221ST DISTRICT COURT,
MONTGOMERY COUNTY, TEXAS

## STATE'S APPELLATE BRIEF

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas

**NANCY HEBERT**
Assistant District Attorney
Montgomery County, Texas

**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas
T.B.C. No. 24087284
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
936-788-8395 (FAX)
brent.chapell@mctx.org

**ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2, the State hereby supplements the appellant's list of parties to this appeal with the names of all trial and appellate counsel for the State:

District Attorney:

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

Counsel for the State in the trial court:

**NANCY HEBERT**
**JEFF HOHL**
Assistant District Attorneys
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

Counsel for the State in the appellate courts:

**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .............................................................. ii

TABLE OF CONTENTS ...................................................................................... iii

INDEX OF AUTHORITIES .................................................................................. v

STATEMENT OF THE CASE ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 1

SUMMARY OF THE STATE'S ARGUMENT ...................................................... 4

ARGUMENTS AND AUTHORITIES ................................................................... 6

    I.    The trial court did not reversibly err by denying the appellant's motion for continuance to allow an expert more time to review inconsequential DNA findings. ............................. 6

    II.   The trial court did not abuse its discretion by admitting evidence related to an extraneous sexual assault of a child under article 38.37. ........................................................ 8

        A.    The appellant sexually assaulted K.B. when she was a child. ....................................................................... 10

        B.    The appellant failed to preserve his constitutional claims. ................. 11

        C.    Courts have consistently upheld article 38.37 in the face of constitutional challenges. ........................................ 12

    III.  The trial court did not abuse its discretion by concluding that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice. ...................................................................... 14

IV. The trial court did not abuse its discretion by permitting Dr. Lawrence Thompson's testimony....................................................................16

    A. Dr. Thompson is qualified to testify as an expert about child sexual abuse.......................................................................17

    B. Any error in allowing Dr. Thompson to quantify the frequency in which he experiences children falsely alleging sexual abuse was not preserved and did not harm the appellant. ...................................................................18

V. The trial court did not reversibly err by exempting an expert from "The Rule."...................................................................21

VI. The evidence is sufficient to support the jury's verdict based on K.G.'s testimony and other corroborative evidence. ...........................24

CONCLUSION AND PRAYER....................................................................27

CERTIFICATE OF COMPLIANCE WITH RULE 9.4 ...................................28

CERTIFICATE OF SERVICE .....................................................................28

iv

# INDEX OF AUTHORITIES

## Cases

*Allen v. State*, 436 S.W.3d 815 (Tex. App.—Texarkana 2014, pet. ref'd)...............23

*Alvarez v. State*, 491 S.W.3d 362
(Tex. App.—Houston [1st Dist.] 2016, pet. ref'd)................................................12

*Barshaw v. State*, 342 S.W.3d 91 (Tex. Crim. App. 2011).......................................21

*Belcher v. State*, 474 S.W.3d 840
(Tex. App.—Tyler 2015, no pet.) ................................................................ 9, 13, 14

*Bezerra v. State*, 485 S.W.3d 133
(Tex. App.—Amarillo 2016, pet. ref'd) ........................................................ 13, 14

*Briggs v. State*, 789 S.W.2d 918 (Tex. Crim. App. 1990)....................................9, 12

*Briones v. State*, No. 14-07-01047-CR, 2009 WL 2356626
(Tex. App.—Houston [14th Dist.] July 30, 2009, pet. ref'd)...............................18

*Burdick v. State*, 474 S.W.3d 17
(Tex. App.—Houston [14th Dist.] 2015, no pet.) ..................................................8

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011)..............................................9

*Caston v. State*, No. 01-16-00260-CR, 2017 WL 3298320
(Tex. App.—Houston [1st Dist.] Aug. 3, 2017, no pet.) .....................................13

*Clark v. State*, 365 S.W.3d 333 (Tex. Crim. App. 2012)..........................................12

*Dowling v. United States*, 493 U.S. 342 (1990).........................................................9

*Drillex Sys., Inc. v. Flores*, 1 S.W.3d 112 (Tex. 1999)............................................22

*Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007)..........................................17

*Gaytan v. State*, 331 S.W.3d 218 (Tex. App.—Austin 2011, pet. ref'd)..................15

*Giglioblanco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006)..............................14

*Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010).................................6, 7

*Harris v. State*, 475 S.W.3d 395
(Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ..............................................13

*Jackson v. Virginia*, 443 U.S. 307 (1979) ...................................................24

*Jones v. State*, 428 S.W.3d 163
(Tex. App.—Houston [1st Dist.] 2014, no pet.)..................................................25

*Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992) ....................................20

*Long v. State*, 742 S.W.2d 302 (Tex. Crim. App. 1987).........................................9

*Merritt v. State*, 368 S.W.3d 516 (Tex. Crim. App. 2012) .....................................25

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)......................................20

*Murray v. State*, 457 S.W.3d 446 (Tex. Crim. App. 2015) ......................................24

*Pawlak v. State*, 420 S.W.3d 807 (Tex. Crim. App. 2013)......................................15

*Renteria v. State*, 206 S.W.3d 689 (Tex. Crim. App. 2006)..................................7, 8

*Robisheaux v. State*, 483 S.W.3d 205
(Tex. App.—Austin 2016, pet. ref'd)........................................................ 13, 15

*Russell v. State*, 155 S.W.3d 176 (Tex. Crim. App. 2005) ............................... 22, 23

*Shaw v. State*, 329 S.W.3d 645
(Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ..............................................20

*Stafford v. State*, 813 S.W.2d 503 (Tex. Crim. App. 1991).....................................9

*Turner v. State*, 805 S.W.2d 423 (Tex. Crim. App. 1991).......................................19

*Vela v. State*, 209 S.W.3d 128 (Tex. Crim. App. 2006)........................................17

*Webb v. State*, 766 S.W.2d 236 (Tex. Crim. App. 1989).........................................22

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013) .....................................25

**Statutes**

Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2017)......................................25

Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2017)......................................10

Tex. Penal Code Ann. § 12.42 (West Supp. 2017).......................................................1

Tex. Penal Code Ann. § 22.021 (West Supp. 2017).............................................1, 25

**Rules**

Fed. R. Evid. 414 .......................................................................................................13

Tex. R. App. P. 33.1...............................................................................................11, 19

Tex. R. App. P. 44.2....................................................................................................20

Tex. R. Evid. 403.................................................................................. 14, 16

Tex. R. Evid. 614........................................................................................................22

Tex. R. Evid. 702........................................................................................................17

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

## STATEMENT OF THE CASE

The appellant was charged by indictment with aggravated sexual assault of a child[1] (C.R. 30, 398). For purposes of punishment enhancement, the indictment further alleged that the appellant previously pleaded guilty to committing the felony offense of sexual assault (C.R. 30, 398). The jury found the appellant guilty and, after hearing additional evidence, found the enhancement paragraph to be true and assessed the appellant's punishment at imprisonment for life[2] (C.R. 465).

## STATEMENT OF FACTS

K.G. and her brother often visited their grandparents and stayed with them for several weeks at a time (5 R.R. 31; 6 R.R. 148). During one of those visits, K.G.'s aunt—Angela Havard—planned on taking K.G., K.G.'s brother, and some of their cousins—Arthur, Braeden, and Baileigh—to a local waterpark called Splashtown (5 R.R. 42, 94; 6 R.R. 150). April Havard is the mother of Braeden and Baileigh, and the appellant is April's fiancé (5 R.R. 23; 7 R.R. 153). The night before Angela took the kids to Splashtown, K.G. and her brother slept over at April's house with Braeden and Baileigh (6 R.R. 153).

---

[1] *See* Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2017).

[2] Given the finding of "true" to the enhancement allegation, the appellant was subject to an automatic sentence of life imprisonment. *See* Tex. Penal Code Ann. § 12.42(c)(2)(B)(ii) (West Supp. 2017).

1

The next morning, April went to work and left the kids under the appellant's supervision, despite the fact that he was serving deferred adjudication community supervision for committing sexual assault and was not supposed to be around children other than April's (5 R.R. 33; 7 R.R. 198). Baileigh had basketball camp that morning, so the appellant drove her in his Chevrolet Silverado to the basketball camp at a nearby high school, and K.G. rode along with them (6 R.R. 157; 7 R.R. 230). K.G. was wearing pajamas and one of Baileigh's robes (6 R.R. 154–55). After dropping off Baileigh, the appellant asked K.G. to sit in the front seat, so she relocated there from the back seat (6 R.R. 158).

K.G. testified that on the short drive back to April's house, the appellant stopped at a stop sign, told K.G. to open her legs, moved her shorts and panties to the side, and used his finger to touch "inside" K.G.'s vagina, "where [her] hole is," "past the fatter outer lips" (6 R.R. 159–63, 164–65). The appellant moved his hand "up and down" while asking K.G., who was nine years old, "do you like that?" (6 R.R. 167). K.G. eventually told the appellant to stop, and he replied "do you want to try anything else?" (6 R.R. 167). When K.G. declined, the appellant drove them back to April's house and instructed K.G. to take a shower (6 R.R. 167, 169). K.G. recalled that her vagina "stung" when she urinated, and she hypothesized that something was on the appellant's hands (6 R.R. 169). When Angela arrived to take

2

the kids to Splashtown, she noted that K.G. had just taken a shower and had wet hair, which was odd given that they planned to go to the pool (5 R.R. 101–02).

After the assault, K.G. felt "nervous" and "embarrassed," and she hesitated to tell anyone about it because she "didn't want to ruin anyone's day" (6 R.R. 168, 172). But "the whole thing" was on K.G.'s mind throughout the day (6 R.R. 173). That night, after returning from Splashtown, K.G. got into bed with her grandmother and told her what had happened (6 R.R. 178). This revelation included details such as the appellant's questions to K.G. during the assault, where the assault occurred, where the appellant put his finger inside K.G.'s vagina, and that the appellant told K.G. to take a shower (5 R.R. 150–51). K.G.'s grandparents called her mother, Wendy Gonzales, and K.G tearfully told Wendy what had happened (5 R.R. 49; 6 R.R. 180). Based on that conversation, Wendy and K.G.'s father—who was then estranged from Wendy—immediately drove in the middle of the night from San Antonio to the grandparents' house in Porter (5 R.R. 47).

K.G.'s parents reported the outcry to police (5 R.R. 53), and Detective Todd Hoff of the Montgomery County Sheriff's Office set up a forensic interview and sexual assault nurse examination (SANE) for K.G. and her brother (6 R.R. 63, 65, 73). Hoff confirmed from K.G.'s brother's interview that K.G. had taken a shower after dropping off Baileigh at basketball camp with the appellant (6 R.R. 91–93).

3

Hoff also swabbed for potential DNA several portions of the appellant's truck and the robe K.G. wore during the assault (6 R.R. 95–96, 98).

The SANE nurse testified that, during the examination, K.G. relayed that "[the appellant] touched me with his finger in the girl's part right there" while pointing to female genitalia on a diagram (7 R.R. 128). K.G. further recalled that "[the appellant] pulled my shorts over and my panties and started digging"; and he asked if she liked it and whether she wanted to try something else (7 R.R. 128). K.G. also conveyed that it hurt while she urinated after the assault (7 R.R. 128).

## SUMMARY OF THE STATE'S ARGUMENT

***Reply to Point of Error One:*** The trial court did not reversibly err in denying the appellant's motion for continuance to allow a defense expert more time to review the DNA findings. The appellant has shown neither what further review would have revealed nor how more time would have benefitted his defense, especially given that the State agreed and presented to the jury that the DNA findings did not implicate the appellant in this case.

***Reply to Point of Error Two:*** The appellant failed to preserve his constitutional challenge to article 38.37, section 2(b) of the Code of Criminal Procedure, because the appellant never argued at trial that the admission of evidence that he sexually assaulted another child violated his right to due process.

And even if error had been preserved, this Court need not stray from its sister courts in upholding the constitutionality of section 2(b).

***Reply to Point of Error Three:*** The appellant's main defensive theory at trial was that K.G. fabricated the allegations of sexual assault. Thus, evidence that the appellant sexually assaulted another child was relevant to show that K.G. was not lying, and therefore, that the appellant sexually assaulted K.G. in this case. Given the procedural safeguards limiting the prejudicial impact of such evidence, the trial court did not abuse its discretion in overruling the appellant's Rule 403 objection.

***Reply to Point of Error Four:*** Dr. Lawrence Thompson, Jr., is educated and trained in the area of child sexual abuse, has vast clinical experience in treating child sexual abuse victims, and has testified as a child sexual abuse expert in numerous cases. Thus, he is well qualified to provide expert testimony in cases involving child sexual abuse. And insofar as the appellant preserved error, any error in allowing Thompson to quantify—based on his clinical experience—the occurrence of false allegations in child sexual abuse cases was harmless.

***Reply to Point of Error Five:*** Any error in allowing K.G.'s counselor, Jacy Palmitier, to remain in the courtroom during the testimony of K.G. and Dr. Thompson did not have a substantial and injurious effect on the jury's verdict. Palmitier's testimony merely recalled her conversations with K.G. and did not

reference anyone else's testimony, and K.G.'s account of the sexual abuse was consistent and unwavering from her first outcry through her testimony at trial.

***Reply to Point of Error Six:*** K.G. unequivocally testified, consistent with her prior statements to other witnesses, that the appellant inserted his finger inside K.G.'s vagina when she was nine years old. Thus, the jury could reasonably find K.G. to be credible, and the evidence is sufficient to support the appellant's conviction for aggravated sexual assault of a child.

## ARGUMENTS AND AUTHORITIES

**I. The trial court did not reversibly err by denying the appellant's motion for continuance to allow an expert more time to review inconsequential DNA findings.**

The appellant's first point argues that the trial court erroneously denied his motion for continuance, thus denying him the opportunity to investigate potential DNA issues with the case (Appellant's brief at 8–9). This request stems from the appellant's inability to obtain portions of the DNA analysis records until the time of trial.

To show reversible error predicated on the denial of a pretrial motion for continuance, "a defendant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him." *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). The resolution of a pretrial motion for continuance for the purpose of securing expert assistance is

6

"*particularly* within the discretion of the trial court." *Id.* at 843–44 (emphasis in original). And a defendant must show "specific prejudice to his defense" to establish that the trial court abused its discretion in refusing to grant a continuance. *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006).

The DNA evidence in this case did not inculpate the appellant—the swabs taken from the robe K.G. wore during the assault excluded the appellant as a contributor, and the swabs taken from the truck excluded K.G. as a contributor (7 R.R. 152–54). It is unclear what the appellant seeks to glean from expert review of the entirety of the DNA records. Moreover, the record does not show that the appellant made any effort to have an expert review the data after the trial, and the contents of such a review are not before this Court.

The appellant's claims of prejudice are general and lack the level of specificity required to entitle him to a new trial. *See Gonzales*, 304 S.W.3d at 842 (discussing "considerable specificity" required to establish harm due to the denial of a continuance). The appellant has suggested actual prejudice because "no independent review of the underlying DNA data was able to be conducted" (Appellant's brief at 12), but the appellant has not suggested how or why such review was necessary to further his defense. Rather, the appellant appears to concede that any potential benefit is merely speculative: "In truth, because the trial court denied Appellant's continuance, *it is unknown what information might have*

*been gleaned from the independent expert's review of the DNA files*" (Appellant's brief at 12) (emphasis added).

Such a generalized showing—without any suggestion of what the expert's review would have uncovered—fails to establish that the trial court abused its discretion by denying the motion for continuance. *See Renteria*, 206 S.W.3d at 699; *see also Burdick v. State*, 474 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (finding no reversible error in denial for continuance where the additional evidence the defendant sought was not material to his case). Because the appellant has failed to show that the trial court abused its discretion by denying his motion for continuance on the week of trial, this Court should overrule the appellant's first issue.

## II. The trial court did not abuse its discretion by admitting evidence related to an extraneous sexual assault of a child under article 38.37.

The appellant's second point argues that the trial court erred by admitting evidence during the guilt phase of trial related to the appellant's sexual assault of another child, K.B. (Appellant's brief at 12–13). The appellant does not suggest that the nature of the extraneous crime does not fall within the purview of article 38.37 of the Code of Criminal Procedure, but instead argues that the admission of such evidence violated his constitutional rights to due process and the due course of law (Appellant's brief at 13). The appellant contends that the trial court's ruling

8

deprived him of the right to an impartial jury by infringing on the presumption of innocence and lowering the State's burden of proof (Appellant's brief at 13).

The due process clause requires the State to prove every element of a charged crime beyond a reasonable doubt. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). Generally, the State must try an accused only for the charged offense and not for a collateral crime or being a criminal generally. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). The essential guarantee of due process is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures. *Long v. State*, 742 S.W.2d 302, 320 (Tex. Crim. App. 1987), *overruled on other grounds*, *Briggs v. State*, 789 S.W.2d 918, 921 (Tex. Crim. App. 1990). To establish a due process violation, the appellant must show "that the challenged statute or rule violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency.'" *Belcher v. State*, 474 S.W.3d 840, 843 (Tex. App.—Tyler 2015, no pet.) (quoting *Dowling v. United States*, 493 U.S. 342, 353 (1990)).

Article 38.37 provides that in trials for certain sexual offenses:

Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) [including sexual assault of a child] may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) [including aggravated sexual assault of a child] for any bearing the evidence has on relevant

9

matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b) (West Supp. 2017). Section 2-a provides a procedural safeguard by requiring the trial court, before admitting evidence described by section 2, to: (1) determine that the evidence likely to be admitted will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and (2) conduct a hearing outside the presence of the jury for that purpose. *Id.* art. 38.37, § 2-a.

### A. The appellant sexually assaulted K.B. when she was a child.

In a hearing outside the presence of the jury, the State proffered evidence regarding an extraneous offense committed by the appellant against K.B.[3] That evidence showed that in 2003, when K.B. was sixteen years old and the appellant was an adult, K.B. went to a bonfire party where she drank alcohol and met the appellant (4 R.R. 4; 3 MAJ R.R. 16–17). K.B. rode a four-wheeler with the appellant and at some point stopped and got ants all over her pants (4 R.R. 5; 3

---

[3] K.B. testified extensively in a motion to adjudicate hearing stemming from a separate sexual assault case, in trial court cause number 08-12-11826-CR, and in which the appellant previously pleaded guilty in exchange for the State's recommendation of community supervision. The adjudication hearing took place the week prior to trial in this case. The trial court allowed the State to proffer the same evidence in this case and specifically referred back to the court's knowledge of the testimony from that hearing (4 R.R. 4–5). Accordingly, the State has filed in this Court a motion to consider the record from the adjudication hearing for purposes of deciding this appeal. This brief designates citations to the record of the adjudication hearing as "MAJ."

MAJ R.R. 18). When K.B. removed her pants in an attempt to shake off the ants, the appellant and his friend came over and started touching her (4 R.R. 5; 3 MAJ R.R. 20). The appellant touched K.B.'s vagina while his friend fondled her breasts (3 MAJ R.R. 20). K.B. told them to stop and asked to go back to the bonfire (3 MAJ R.R. 21).

But when they arrived at the bonfire, no one else was there, so K.B. told the appellant to take her home (3 MAJ R.R. 21–22). The appellant took K.B. to his house, and at that point, she started to "black out" (3 MAJ R.R. 22). K.B. remembered the appellant telling her she could not ride in his truck while she was "filthy" (3 MAJ R.R. 22–23). K.B. also remembered waking up in the shower, naked, while the appellant and his friend stared at her (3 MAJ R.R. 23). K.B. remembered next lying on the appellant's bed, and the appellant was on top of her, "raping [her,]" by having vaginal intercourse (4 R.R. 6; 3 MAJ R.R. 24). As he molested K.B., the appellant looked back at his friend and told him that K.B. had "a nice tight ass" (3 MAJ R.R. 24). K.B. woke up the next morning and asked the appellant to take her home, but the appellant dropped K.B. off about three blocks from her destination (3 MAJ R.R. 25).

**B.** **The appellant failed to preserve his constitutional claims.**

A party must timely and specifically object to preserve error for appeal. *See* Tex. R. App. P. 33.1(a)(1)(A). Even constitutional errors—including due process

11

and due course of law challenges—may be forfeited by failing to object at trial. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (failure to object to violation of due process right to fair trial waived error); *Briggs*, 789 S.W.2d at 924.

Here, the appellant did not object on grounds that the trial court's admission of the evidence related to his sexual assault of K.B. violated his right to an impartial jury, infringed upon the presumption of innocence, or lowered the State's burden of proof. He instead limited his objections to article 38.37 and Rule of Evidence 403 (6 R.R. 225). These objections did not preserve his claim on appeal that the admission of extraneous offense evidence violated his constitutional rights to due process and the due course of law. *See Alvarez v. State*, 491 S.W.3d 362, 368–69 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (failure to raise due process challenge to art. 38.37, § 2(b), at trial did not preserve claim on appeal).

### C. Courts have consistently upheld article 38.37 in the face of constitutional challenges.

Even if this Court assumes for argument's sake that the appellant preserved his constitutional claims, multiple courts of appeals have held that article 38.37, section 2 does not violate a defendant's rights to due process and due course of law.

For example, in *Belcher*, the Twelfth Court of Appeals addressed the constitutionality of article 38.37, section 2, of the Code of Criminal Procedure. *See Belcher*, 474 S.W.3d at 843. The court reviewed the history of character-

12

propensity evidence and the fact that a federal statute with "virtually the same effect has been upheld in the face of constitutional challenges." *See id.* at 846 (discussing Fed. R. Evid. 414(a)). In rejecting the defendant's constitutional challenge, the court noted the unique evidentiary concerns in child sexual abuse cases, and ultimately reasoned that section 2(b) is more narrowly drawn than its federal counterpart and has several procedural safeguards that "protect the defendant against the admission of evidence that is so prejudicial as to deprive the defendant of a fair trial." *Id.* at 847. Several other intermediate courts of appeals have addressed similar constitutional challenges to section 2(b) and have uniformly upheld its constitutionality. *See, e.g., Caston v. State*, No. 01-16-00260-CR, 2017 WL 3298320, at *8 (Tex. App.—Houston [1st Dist.] Aug. 3, 2017, no pet.) (not yet published); *Bezerra v. State*, 485 S.W.3d 133, 139–40 (Tex. App.—Amarillo 2016, pet. ref'd); *Robisheaux v. State*, 483 S.W.3d 205, 209 (Tex. App.—Austin 2016, pet. ref'd); *Harris v. State*, 475 S.W.3d 395, 403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

The appellant has not raised novel arguments to convince this Court to stray from its sister courts. Thus, article 38.37, section 2(b), does not deprive the appellant of his right to due process, and this Court should reject his constitutional challenge.

**III.** **The trial court did not abuse its discretion by concluding that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice.**

The appellant's third issue argues that evidence of the extraneous sexual assault of K.B. was inadmissible under Rule of Evidence 403.

One of the procedural safeguards of article 38.37 is that evidence admitted pursuant to section 2(b) is still subject to a Rule 403 analysis. *See Belcher*, 474 S.W.3d at 847. Rule 403 provides that a trial court may exclude otherwise relevant evidence if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence. Tex. R. Evid. 403. When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Giglioblanco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403 favors the admission of relevant evidence, and there is a presumption that relevant evidence will be more probative than prejudicial. *Bezerra*, 485 S.W.3d at 140. An

14

appellate court reviews a trial court's Rule 403 ruling for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013).

Evidence that a defendant has sexually abused another child is relevant to whether the defendant sexually abused the child victim in the charged case. *See Robisheaux*, 483 S.W.3d at 220–21; *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (holding that defendant's extraneous commission of sexual offenses against two other children was "straightforward and directly relevant to the only issue in the case, namely whether [the defendant] abused [the complainant]"). Thus, evidence that the appellant previously sexually assaulted K.B. was relevant to whether he sexually abused K.G.

Moreover, the appellant's primary defensive theory at trial was that K.G. fabricated the allegations of abuse, so the appellant's propensity to sexually assault children was highly probative in determining K.G.'s credibility. Likewise, no medical or physical evidence specifically corroborated K.G.'s account of the abuse, so the need for the extraneous evidence was significant. On the other hand, the trial court limited the potential for unfair prejudice by instructing the jury in accordance with article 38.37 and by allowing the defense to present a rebuttal witness—out of order and immediately after K.B. testified—to call K.B.'s account into question.

Although K.B.'s testimony was likely prejudicial to the appellant's defense, the legislature has specifically allowed such evidence in difficult cases such as those involving child sexual abuse, and the standard for error requires the potential prejudice to "substantially outweigh" the probative value of the evidence. *See* Tex. R. Evid. 403. Given the statutory safeguards employed by the trial court, the appellant has failed to establish that the trial court acted outside the zone of reasonable disagreement by concluding that the extraneous sexual assault was admissible over the appellant's Rule 403 objection.

This Court should overrule the appellant's third point of error.

## IV. The trial court did not abuse its discretion by permitting Dr. Lawrence Thompson's testimony.

The appellant's fourth point argues that the trial court erred by allowing Dr. Thompson to testify as an expert on child sexual abuse (Appellant's brief at 26). The appellant also specifically challenges Thompson's testimony that less than three percent of the cases in his clinical experience involve the child making a false allegation (Appellant's brief at 26, 44).

A party may challenge expert testimony on at least three specific grounds: (1) the expert lacks qualification due to inadequate knowledge, skill, experience, training, or education in the subject matter of the expert's testimony; (2) the testimony's subject matter is inappropriate because it is unreliable; and (3) the testimony will not assist the fact-finder in deciding the case. *Vela v. State*, 209

16

S.W.3d 128, 131 (Tex. Crim. App. 2006); *see* Tex. R. Evid. 702. Courts commonly refer to these three requirements as qualification, reliability, and relevance. *Vela*, 209 S.W.3d at 131. The appellant in this case objected to Thompson's testimony on the grounds of qualification and relevance (5 R.R. 243–44).

### A. Dr. Thompson is qualified to testify as an expert about child sexual abuse.

To be a qualified expert, a witness must have a sufficient background in a particular field; and the trial judge must determine whether that background "goes to the very matter on which [the witness] is to give an opinion." *Id.* at 131. The proponent must also establish that the expert has "knowledge, skill, experience, training, or education" regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Id.* at 132. An appellate court reviews a trial court's decision to allow expert testimony for abuse of discretion. *See Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007).

Here, Thompson's curriculum vitae was admitted as evidence and shows that he earned a master's degree in clinical psychology and a doctoral degree in clinical psychology (10 R.R. 57–58). He testified that he is the director of therapy and psychological services at the Harris County Children's Assessment Center, where he has been employed for sixteen years, and his primary clinical focus is children who have been physically or sexually abused (5 R.R. 219–21). Thompson had testified in court several times as an expert in the area of child sexual abuse, the

17

opinions he relied upon are generally accepted in his profession, and he had reviewed peer-reviewed studies and articles on the topic (5 R.R. 222, 227). Thompson's doctoral dissertation dealt with child sexual abuse, and he had recently published an article in the same area, although he could not remember the specific title of the article or the specific journal in which it appeared (5 R.R. 230–31). Based on this evidence, the trial court did not abuse its discretion in determining that Thompson had the necessary specialized knowledge and training to testify as an expert in the area of child sexual abuse. *See, e.g., Briones v. State*, No. 14-07-01047-CR, 2009 WL 2356626, at *3 (Tex. App.—Houston [14th Dist.] July 30, 2009, pet. ref'd) (mem. op., not designated for publication) ("Dr. Thompson's academic and professional background focusing on the treatment and observation of child victims of sexual abuse appropriately matches the subject matter of his testimony focusing on the behavioral patterns of child victims of sexual abuse.").

**B. Any error in allowing Dr. Thompson to quantify the frequency in which he experiences children falsely alleging sexual abuse was not preserved and did not harm the appellant.**

The appellant's relevance argument rests on the following exchange:

[The State]: Okay. Now, with regard to false allegations, based on your clinical experience, how often does a child make a false allegation?

[The appellant]: Your Honor, I object. This witness has just said he doesn't do research.

18

[The State]:    Your Honor, she has opened the door to this line of questioning and I'm asking about his clinical experience.

THE COURT:    If he's familiar though his clinical experience or though studies or literature that he's read, I will allow the witness to answer the question, if he's familiar.

[Thompson]:    I am definitely familiar with my own clinical experience. And my estimation is that it is a rare occurrence. It is possible, you-all, but it is a rare occurrence. In my clinical experience, you know, certainly less than 3 percent of the cases that I have somehow been involved in have involved the child making a false allegation. But again, rare, but it is possible.

(6 R.R. 55–56). Assuming without conceding that such testimony was inadmissible, any error was not reversible.

        1.    The appellant's non-legal objection failed to adequately inform the trial court of the legal grounds entitling him to relief.

To preserve error for appellate review, a party must make a timely, specific objection on the record and receive an adverse ruling on that objection. *See* Tex. R. App. P. 33.1(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). To satisfy the specificity requirement, the party must "let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in the proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App.

19

1992).  Despite the absence of an express objection, error may be preserved if a specific objection was apparent from the context.  *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Here, the appellant's objection of "[t]his witness has just said he doesn't do research" did not sufficiently apprise the trial court that the appellant challenged the relevance of the potential answer to the State's question of how often children falsely allege sexual abuse.  At best, the objection addressed whether the elicited answer was within Thompson's personal knowledge, not whether the answer would assist the trier of fact.  And although the appellant previously challenged the relevance of the entirety of Thompson's testimony, the trial court did not then have reason to believe that Thompson's testimony would include a quantification of the frequency of false allegations in child sexual abuse cases.  The trial court was not in the "proper position to do something about it" until the specific issue arose, but at that time, the appellant did not properly object.  He has therefore failed to preserve error.

2.     If the appellant had preserved error, any error was harmless.

The admission of irrelevant evidence under Rule 702 is non-constitutional error which must be disregarded unless it affected the appellant's substantial rights.  *See* Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002).  An appellate court should not overturn a conviction for non-constitutional

20

error if, after examining the record as a whole, the court has fair assurance that the error did not influence the jury, or had only a slight effect. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011).

Here, the State elicited Thompson's quantification of how often children falsely allege sexual abuse in response to the appellant's introduction of evidence on cross-examination that Thompson had previously testified that false allegations are "extremely rare" (*see* 6 R.R. 41). It is highly unlikely that Thompson's specific quantification as to what "extremely rare" meant had a substantial effect on the jury's verdict even though the State referred to such testimony in closing argument. Importantly, Thompson did not specifically relate his testimony to the facts of this case, and this case involved a consistent, detailed, and corroborated account by a child regarding a specific act of sexual abuse by someone she knew. This strong evidence of guilt cures any potential error in admitting the challenged testimony.

This Court should overrule the appellant's fourth point of error.

## V. The trial court did not reversibly err by exempting an expert from "The Rule."

The appellant's fifth point complains of the trial court's decision to allow Jacy Palmitier to sit in the courtroom during the testimony of K.G. and Dr. Thompson (Appellant's brief at 46). Palmitier is a licensed professional counselor who provided K.G. with therapy services because K.G. experienced nightmares,

21

sleeping issues, anxiety, and other ailments after the appellant molested her (6 R.R. 289; 7 R.R. 16, 44–45).

Rule of Evidence 614, also known as "the Rule," prevents witnesses from remaining in the courtroom during the testimony of other witnesses. *See* Tex. R. Evid. 614. The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on the testimony of another witness. *See Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). The Rule exempts from courtroom exclusion "a person whose presence a party shows to be essential to presenting the party's claim or defense." Tex. R. Evid. 614. This often includes experts, but the designation as an expert does not automatically exempt a witness from the Rule. *See Drillex Sys., Inc. v. Flores*, 1 S.W.3d 112, 116–18 (Tex. 1999). The party seeking to exempt an expert witness from the Rule's sequestration requirement bears the burden to establish that the witness's presence is essential. *Id.*

However, a violation of the Rule is an evidentiary ruling that is subject to the harm analysis for non-constitutional error. *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005). "The question in assessing harm of allowing [a witness] to remain in the courtroom is whether he was influenced by the testimony he heard." *Id.*

If this Court assumes that the State failed to meet its requisite burden of proof, any error in allowing Palmitier to remain in the courtroom was harmless.

22

The appellant claims harm on the basis that Palmitier heard the testimony of two key witnesses, and her testimony corroborated their claims (Appellant's brief at 49). But this is insufficient to show that the trial court's alleged error had a substantial and injurious effect on the jury's verdict. *See Russell*, 155 S.W.3d at 181; *Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd).

In *Allen*, for example, the Sixth Court of Appeals addressed the trial court's decision to allow the executive director of the local Children's Advocacy Center to be present in the courtroom for the testimony of the victim and the medical doctor who examined the victim in an aggravated sexual assault of a child case. *See* 436 S.W.3d at 822. The defendant's principal argument as to harm was that the witness's testimony corroborated that of the witnesses she heard testify. *See id.* at 823–24. But the court of appeals rejected this claim, reasoning that the witness's testimony "added nothing to the child's trial testimony with respect to the sexual assault" at issue; the child victim was twelve years old at the time of trial, and her clearly-articulated testimony was consistent, strong, and unwavering; the witness admitted that the victim could have been lying; and the witness's testimony did not contradict the victim's prior outcry. *See id.* at 824–25. Thus, because the witness merely recalled her conversation with the victim, and did not appear to glean anything from the victim's testimony, any error in violating the Rule was harmless. *See id.* at 825.

Similarly, here, Palmitier's testimony merely recounted her conversations with K.G. and added no meaningful details to K.G.'s account of sexual abuse; K.G. was detailed and consistent throughout her statements to various individuals regarding the sexual abuse; K.G. was eleven years old at the time of trial and clearly articulated, without wavering, that the appellant digitally penetrated her vagina. Moreover, the appellant has not alleged how Palmitier's presence in the courtroom during other witness's testimony had any specific effect on Palmitier's subsequent testimony. Given the strength of corroborating evidence separate from Palmitier's testimony, this Court should be confident that allowing Palmitier to remain in the courtroom did not substantially influence the jury's verdict.

The appellant's fifth point of error should be overruled.

## VI. The evidence is sufficient to support the jury's verdict based on K.G.'s testimony and other corroborative evidence.

The appellant's final point argues that the evidence is insufficient to support his conviction for aggravated sexual assault of a child (Appellant's brief at 14).

In reviewing the sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The sufficiency standard requires deference to the jury's role as the sole judge of the witnesses'

24

credibility and the weight to be given their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). When the record supports conflicting inferences, the court must presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

A person commits the offense of aggravated sexual assault of a child, as relevant in this case, if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means, and the victim is younger than fourteen years of age. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West Supp. 2017). It is well settled that a child sexual abuse victim's uncorroborated testimony is sufficient to support a conviction for aggravated sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2017); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005). "The State has no burden to produce any corroborating or physical evidence." *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Additionally, courts liberally construe the testimony provided by child victims of sexual abuse: "as long as the child communicates to the jury that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient." *Id.*

In this case, K.G. unequivocally testified that she was only nine years old when the appellant waited until they were alone in his truck, asked K.G. to ride in

25

the front seat, and sexually assaulted her when they paused at a stop sign after taking K.G.'s cousin to basketball camp. K.G. explicitly recalled that the appellant put his finger inside her vagina, moved it up and down, and asked whether she liked it and wanted to try something else. After her rejection, the appellant ordered K.G. to take a shower, and it hurt K.G. when she urinated. This evidence alone is sufficient to establish that the appellant caused the penetration of K.G.'s vagina by inserting his finger.

Yet, additional evidence corroborated the circumstances surrounding the assault. Although some of the corroborative testimony relied on K.G.'s outcry, the consistency of K.G.'s detailed report of the sexual abuse throughout the ensuing investigation indicates that K.G. was telling the truth. Moreover, several witnesses confirmed many of the facts surrounding K.G.'s account of the assault, including that K.G. rode with the appellant in his truck to take Baileigh to basketball camp, K.G. was wearing pajamas and Baileigh's robe, K.G. took a shower when they returned, the kids went to Splashtown later that day, and K.G.'s demeanor changed after the assault. This corroborative evidence showing the appellant's access and opportunity to molest K.G. supports the jury's determination that K.G. was credible, and this Court should not invade the jury's role to make such credibility determinations. So the evidence was sufficient to support the appellant's conviction, and this Court should overrule his sixth point of error.

## CONCLUSION AND PRAYER

It is respectfully submitted that all things are regular and the judgment of the trial court should be affirmed.

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas


*/s/ Brent Chapell*
**BRENT CHAPELL**
T.B.C. No. 24087284
Assistant District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
936-788-8395 (FAX)
brent.chapell@mctx.org

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

I hereby certify that this document complies with the requirements of Tex. R. App. P. 9.4(i)(2)(B) because there are 6,482 words in this document, excluding the portions of the document excepted from the word count under Rule 9.4(i)(1), as calculated by the Microsoft Word computer program used to prepare it.

*/s/ Brent Chapell*
**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served via efile.txcourts.gov to Inger Chandler, counsel for the appellant, at inger@ingerchandlerlaw.com on the date of the submission of the original to the Clerk of this Court.

*/s/ Brent Chapell*
**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas