

# NUMBER 13-23-00482-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ROJELIO ESTRACA JR.,**        **Appellant,**

**v.**

**THE STATE OF TEXAS,**        **Appellee.**

## ON APPEAL FROM THE 148TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Justice West**

Appellant Rojelio Estraca Jr. challenges his conviction of continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b), (h). After a bench trial, the trial court found Estraca guilty of the offense and sentenced him to twenty-nine years' imprisonment. Estraca argues on appeal that (1) there was legally insufficient

evidence to support his conviction, and (2) the trial court abused its discretion when it denied his motion to dismiss. We affirm as modified.

## I. BACKGROUND

Estraca was accused of sexually abusing his stepdaughter I.G.[1] when she was ten and eleven years old. From about ages four to eleven, I.G. lived with her mother, Estraca, and her two siblings. A.V.G., I.G.'s mother, testified that on June 2, 2018, I.G. told her that "some inappropriate messaging [was] going on between" her and Estraca. On cross examination, A.V.G. testified that I.G. told her Estraca sent her a message telling her "to go to the restroom and take a picture of herself in her panties and send it to him." That same day, A.V.G. confronted Estraca about I.G.'s accusations. She stated that Estraca "kept telling [her] he was sorry," "that nobody had to know about this," and to "just keep it between" them.

A.V.G. testified that Estraca moved out of their family home but came back about two weeks later because he "kept texting" that he was sorry. Text messages from Estraca were entered into evidence. On direct, A.V.G. read some of the text messages out loud:

> [I] still love you with all my heart, and the kids. I miss you[ ]all so much. You deserve the world, and I want to be there for you. Please, don't. I'm doing everything possible to change my whole life. You saw that in me when I was there with you. I wasn't pretending like nothing happened. I was being the way I should've been with you, like when we fell in love in the beginning, and I was treating you right and helping you with everything cuz (sic) you deserve it all. [A.V.G.], please. I apologize to you and [I.G.], and you know I would never do anything to hurt you ever again. I love you[ ]all so much.
>
> . . . .

---

[1] To protect the identity of the minor child, we refer to her and her family by their initials. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

I am so sorry, [A.V.G.], for everything. I will never be that ugly person again. I promise you I was not right and weak-minded and so wrong for my actions. Please just give me the chance to make things right with God and you and with the kids. I beg you. I will respect everything you say and keep my distance. I don't want things to get worse. I'm ashamed and broken, and I'm doing everything possible to fight this evil off. That's why I've been going to church.

H.G., I.G.'s biological father, testified that I.G. outcried to him on August 3, 2018. That same day, A.V.G. and H.G. contacted the police to report I.G.'s allegations. H.G. said I.G. told him that Estraca touched "her breast and her vagina area," and he touched her "probably every other day" for one or two years. He said I.G. told him the touching occurred under and over her clothes, took place primarily in her bedroom before people in the house were awake in the morning, and Estraca would get upset or mad when she told him to stop. H.G. recorded I.G.'s outcry, and the trial court admitted the audio recording which was played at trial.

Arianne Valdez, a children's forensic interviewer, met with I.G. on August 7, 2018. Valdez testified that I.G. was eleven years old at the time of the interview. Valdez said I.G. told her that the alleged abuse started "in the school year of when she was 10" and continued until the summer before the interview. I.G. told her "that [Estraca] touched her breast" and "her vagina," and touched her both "inside and outside." She testified that I.G. described how Estraca touched "her chest and that his hands would move down and then they would start touching her vagina." She said I.G. also indicated to her that she had seen Estraca's penis and had "touched [Estraca] on his penis on the skin."

Elana Estrada, a sexual assault nurse examiner (SANE), examined I.G. on August 10, 2018. She said I.G. told her that the first incident of abuse occurred "about a year

3

ago" and the abuse continued "until the first month of this summer." Estrada read I.G.'s statements from her report:

> Patient further states: ["]Usually in the morning, some weekends, when everyone was asleep, my step dad, [Estraca], would come into my room. He woke me up, and he would touch me here with his hand. (Patient indicates female sexual organ by pointing. She points to her genital area.) He put his mouth there sometimes. He would put his private in my mouth sometimes. He also tried doing that when we stayed at his cousin's house. He told me not to tell my mom or say anything or he would take my cell phone away or things like that.["]

Estrada said that I.G. told her that Estraca "touch[ed] her in her genital area" but did not specify whether she was penetrated.

I.G. was sixteen years old at trial. She testified that one of the first instances of abuse occurred in the living room when she was in fourth grade:

> One of the first things I remember happening is us, me and [Estraca], being in the living room of our home, watching something on the T.V., and it was just us there in the living room, I don't remember, and us sitting together on the couch of our living room and—I don't remember how it had gotten out, but his . . . penis was out, and he was asking me . . . to lick it and to put my mouth on it, and something I remember him saying was to . . . lick it like as if it was a lollipop . . . .

She testified that she then licked Estraca's penis. At the time, she was confused, and not sure if this was "something that was supposed to happen." During this incident, I.G. said that Estraca "propped up" a pillow to hide his penis so that "if somebody were to walk in, they wouldn't see." She said that she put her mouth on Estraca's penis multiple times from fourth to fifth grade.

I.G. described other incidents of sexual abuse. She said that some mornings Estraca would come into her room and "he would touch [her] like on [her] chest and near [her] legs" and touch her "private area" with his hands. She could not remember if the

4

touching occurred under or over her clothes. She said Estraca touched her in this way "multiple times" when she was in fourth and fifth grade. Other times, Estraca would take her to his bedroom while her mom was not home, and "he would touch himself, like his penis," show her pornography, and tell her "that's what [she] should do to him." She also said there were times Estraca put his mouth on her private area and asked her "if it felt good." She could not remember when these incidents occurred but testified that they happened multiple times.

Estraca denied ever abusing I.G. He testified that he mistakenly sent the Snapchat message to I.G. that asked her to send him a picture of her in her underwear. He said he sent the message after having some drinks with friends and he meant to send the message to A.V.G. He contended that the apology text messages he sent to A.V.G. were only about the Snapchat message, and that when A.V.G. confronted him, she did not accuse him of any sexual abuse. Estraca testified that he moved out of the family's house for a couple weeks, but life went back to normal when he moved back in. He testified extensively about many activities the family did together that summer. He had "no idea" why I.G. would lie about the abuse but did not "believe [that] she made it up on her own." He testified that A.V.G. must have had a reason to make I.G. lie about the abuse, but he could not identify a specific motive.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Estraca argues that there was legally insufficient evidence to support his conviction.

5

**A.      Standard of Review & Applicable Law**

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). We defer to the jury's role as the fact finder, which includes "resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* This standard of review is the same for a bench trial. *See, e.g.*, *Hinojosa v. State*, 555 S.W.3d 262, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

A person over the age of seventeen commits the offense of continuous sexual abuse of a young child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" against a child younger than fourteen years

of age. TEX. PENAL CODE ANN. § 21.02(b); *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE ANN. § 21.02(b)). For purposes of § 21.02, the term "acts of sexual abuse" includes "aggravated sexual assault under [§] 22.021" and "indecency with a child under [§] 21.11(a)(1)." TEX. PENAL CODE ANN. § 21.02(c)(2), (4).

A person commits aggravated sexual assault of a child younger than fourteen if the person, "regardless of whether the person knows the age of the child at the time of the offense, intentionally or knowingly":

> (i)      causes the penetration of the anus or sexual organ of a child by any means;
>
> (ii)     causes the penetration of the mouth of a child by the sexual organ of the actor;
>
> . . . .
>
> (v)     causes the mouth of a child to contact the anus or sexual organ of another person, including the actor[.]

*Id.* § 22.021(a)(1)(B)(i), (ii), (v). A person commits indecency with a child by contact "if, with a child younger than 17 years of age," the person engages in sexual contact with the child. *Id.* § 21.11(a). "Sexual contact" under § 21.11(c) includes the following acts "if committed with the intent to arouse or gratify the sexual desire of any person": (1) "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," and (2) "any touching of any part of the body of a child, including touching through clothing with . . . any part of the genitals of a person." *Id.* § 21.11(c). Touching a child complainant's breast is not a predicate act or "act of sexual abuse" under the continuous child sex abuse statute. *Id.* § 21.02(c)(2).

7

**B.    Analysis**

Estraca argues that "the State's evidence failed to establish at least two of the five acts alleged in the indictment, as required under Texas Penal Code § 21.02." The indictment alleged that Estraca:

> did then and there during a period that was 30 days or more in duration, to-wit: from on or about June 1, 2017, through June 1, 2018, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [I.G.], a child younger than 14 years of age, namely:
>
> intentionally and knowingly cause the penetration of the sexual organ of [I.G.], a child who was then and there younger than 14 years of age, by defendant's finger;
>
> intentionally and knowingly cause the mouth of [I.G.], a child who was then and there younger than 14 years of age, to contact the sexual organ of the defendant;
>
> intentionally and knowingly cause the penetration of the mouth of [I.G.], a child who was then and there younger than 14 years of age, by the defendant's sexual organ;
>
> with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [I.G.], hereafter styled the complainant, by touching the sexual organ of the complainant, a child younger than 17 years of age with defendant's mouth;
>
> with the intent to arouse or gratify the sexual desire of the defendant, cause [I.G.], hereafter styled the complainant, a child younger than 17 years of age, to engage in sexual contact by causing the complainant to touch the sexual organ of the defendant; against the peace and dignity of the State.

The first three acts in the indictment allege aggravated sexual assault and acts four and five allege indecency with a child by contact. *See id.* §§ 21.02, 21.11, 22.021.

Estraca misconstrues Texas Penal Code § 21.02 and the indictment. A person commits the offense of continuous sexual abuse of a child if they commit two or more

8

acts of sexual abuse during a period that is at least thirty days in duration.[2] *Id.* § 21.02(b). The statute does not require the State to prove two different types of sexual abuse. *Id.* The offense can be proven if there are multiple instances of the same alleged act. *See Ramos v. State*, 636 S.W.3d 646, 656 (Tex. Crim. App. 2021) ("The gravamen of a [§] 21.02 offense is not a particular instance of one of the offenses listed in [§] 21.02(c). Instead, it is the commission of at least two such offenses."). Further, the indictment does not allege that Estraca committed only one instance of each of the five alleged acts of sexual abuse. Thus, even if the evidence showed that Estraca committed the same manner and means of abuse on multiple occasions, as long as the alleged type of abuse occurred at least twice with at least thirty days between the first and last act, the evidence would still support his conviction. *See id.* 656.

Nevertheless, Estraca argues that there is "no evidence" that he penetrated I.G.'s sexual organ with his finger, that his sexual organ penetrated or had contact with I.G.'s mouth, and there is "insufficient evidence" of the indecency allegations because the witness testimony that Estraca touched I.G. was "inconsistent." Estraca does not dispute that the eyewitness testimony of a child victim alone is sufficient to support a conviction for a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005); *Saldivar-Lopez v. State*, 676 S.W.3d 851, 859 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). Instead, he argues that I.G.'s testimony cannot support his conviction because it was "vague," and she could not

---

[2] There is no dispute in this case that Estraca was over seventeen years of age and that I.G. was younger than fourteen years of age at the time of the alleged abuse. *See* TEX. PENAL CODE ANN. § 21.02(b).

remember if Estraca ever touched her under her clothes, as required for the indecency allegations. *See* TEX. PENAL CODE ANN. § 21.11(c) (defining sexual contact as "touching through clothing" of any part of the genitals of a child, and "any touching of any part of the body of a child touching through clothing with . . . any part of the genitals of a person").

"Courts give wide latitude to testimony given by child victims of sexual abuse." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990)). "The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult." *Id.* I.G. testified, clearly and directly, that Estraca coerced her to perform oral sex, touched her vagina with his hand, performed oral sex on her, and that these acts happened multiple times while she was in fourth and fifth grade. We disagree that I.G.'s testimony was so vague that no reasonable fact finder could have believed her. *See Perez v. State*, 689 S.W.3d 369, 378 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (concluding that the evidence was legally sufficient to support appellant's conviction for continuous sexual abuse of a child because the testimony of the child complainant alone was sufficient); *Reckart v. State*, 323 S.W.3d 588, 598 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) (same).

While I.G. could not remember if Estraca touched her under her clothes, three other witnesses testified that I.G. told them Estraca touched her under her clothes. Ultimately, like most sexual assault cases, the evidence at trial was decided by weighing the credibility of witness testimony. *See Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) ("Sexual assault cases are frequently 'he said, she said' trials in which

10

the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence."). The fact finder is the sole judge of witness credibility and resolving conflicts in testimony, and we may not disturb that determination on appeal. *See Stahmann*, 602 S.W.3d at 577; *Murray*, 457 S.W.3d at 448.

Estraca also argues that even if "the State's evidence proved any of the alleged acts," there was insufficient evidence that there was at least thirty days between the first and last act of sexual abuse. *See* TEX. PENAL CODE ANN. § 21.02(b). He contends that the testimony at trial "fail[ed] to identify which sexual act occurred and when it occurred." However, the State need not prove the exact dates of the alleged sexual abuse. *See id.* § 21.02(d) ("[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed."); *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

I.G. testified about various acts of sexual abuse that occurred multiple times over the course of her fourth and fifth grade school years. H.G. said I.G. told him that Estraca touched "her breast and her vagina area" both under and over her clothes for one or two years. The SANE testified that I.G. told her that Estraca touched her private areas and "put his mouth there sometimes," and these incidents occurred "about a year ago" and continued "until the first month of this summer." Valdez said I.G. told her "that [Estraca] touched her breast" and "her vagina," and touched her both "inside and outside," and these incidents started the previous school year and ended that summer.

11

As stated above, we may not disturb the fact finder's determinations based on witness credibility. *See Stahmann*, 602 S.W.3d at 577; *Murray*, 457 S.W.3d at 448. The trial court could reasonably believe from the evidence presented at trial that thirty or more days elapsed between the first and last acts of abuse. *See Perez*, 689 S.W.3d at 378 (overruling appellant's argument that child complainant's testimony "was too 'vague' to satisfy the duration element" of his conviction for continuous sexual abuse of a child); *see also Quin v. State*, No. 13-22-00493-CR, 2023 WL 8462506, at *5 (Tex. App.—Corpus Christi–Edinburg Dec. 7, 2023, pet. ref'd) (mem. op., not designated for publication) (concluding that though complainant could not testify to how long or how often the abuse occurred, "the jury could infer from the evidence presented at trial that the abuse occurred throughout the time she stayed at Quin's home from August to October 2020").

We conclude that there was sufficient evidence to support Estraca's conviction so that a rational fact finder could find each essential element of the offense beyond a reasonable doubt. We overrule Estraca's first issue.

### III. MOTION TO DISMISS

By his second issue, Estraca argues that the trial court abused its discretion by denying his motion to dismiss predicated on spoliation and an alleged violation of articles 39.14 and 2.1397 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 2.1397, 39.14.

### A. Standard of Review & Applicable Law

When reviewing a trial court's decision on a motion to dismiss, we apply a bifurcated standard, giving almost total deference to the trial court's findings of fact that

12

are supported by the record, as well as any mixed questions of law and fact that rely upon the credibility of witnesses. *See State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011); *State v. Fellows*, 471 S.W.3d 555, 561 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd). For pure questions of law or mixed questions that do not depend on credibility determinations, our review is de novo. *See Krizan-Wilson*, 354 S.W.3d at 815.

"Spoliation concerns the loss or destruction of evidence." *Guzman v. State*, 539 S.W.3d 394, 401 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd)). "[T]here is a distinction between 'material exculpatory evidence' and 'potentially useful evidence' and that difference informs our analysis when deciding whether the State's failure to disclose or preserve evidence violates a defendant's guarantee of due process of law." *Burdick v. State*, 474 S.W.3d 17, 26 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (per curiam)); *see Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988); *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010).

If the State loses or destroys material exculpatory evidence, a due process violation occurs regardless of whether the State acted in bad faith. *Fisher*, 540 U.S. at 547–48. This standard, otherwise known as a *Brady* claim, requires proof that the sought-after evidence was both material and favorable to the defendant such that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011). By contrast, to prove a due process violation based on the loss or destruction of merely "potentially useful evidence," a defendant must

13

show that the State acted in bad faith in destroying the evidence. *See Fisher*, 540 U.S. at 547–48; *Youngblood*, 488 U.S. at 57–58; *Guzman*, 539 S.W.3d at 401.

## B.    Analysis

When A.V.G. and H.G. called the police to report I.G.'s outcry on August 3, 2018, two Robstown PD officers responded. One of the officers, Jordan Armstrong, wore a body camera that day, but the Nueces County District Attorney's Office never received the footage.[3] The parties do not dispute that the footage Robstown PD had in its possession was subsequently lost when the department suffered a ransomware attack in September 2019. Estraca's trial counsel filed a motion to dismiss "Based on Spoliation of Evidence and a Violation of Chapter 2, Tex. Crim. Proc. Art. 2.1397, *The Richard Miles Act*." The trial court denied the motion, finding that the lost evidence was not exculpatory in nature and there was no bad faith on the part of the State.

Estraca argues that the lost body camera footage was "material exculpatory evidence" because "it captured impeachment evidence" of A.V.G.'s and H.G.'s initial statements to police which could have been used to attack A.V.G.'s and H.G.'s credibility.[4] Estraca points to testimony from Detective Armando Lopez, the detective assigned to I.G.'s case, who stated at trial that A.V.G.'s initial statements in Armstrong's

---

[3] The State argues that there is no evidence the body camera footage existed because Armstrong's report was not entered into evidence and that there was no evidence that Armstrong turned on his camera during the interview in question. The State contends that the record "merely suggests that Armstrong was wearing his body camera at the time," though it admits that "there was evidence that officers were required to wear their body cameras and that those cameras were required to be 'active.'" We assume, without deciding, that Armstrong's body camera footage from the interview on August 3, 2018, existed.

[4] The State argues that Estraca failed to preserve this issue on appeal because in a pretrial hearing on the motion to dismiss he "specifically limited his objection to the loss of potentially exculpatory evidence [which] requires a showing of bad faith." *See* TEX. R. APP. P. 33.1(a). We assume, without deciding, that Estraca properly preserved this issue.

police report—which was not admitted as evidence—were inconsistent with the statements that she gave Lopez when he interviewed her several days later. Lopez did not testify about what those inconsistencies were.

Material evidence is evidence that possesses "an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

Assuming the footage was favorable to Estraca, *see Strickler v. Greene*, 527 U.S. 263, 282 n.21 (1999) ("Our cases make clear that *Brady*'s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness."), we conclude that he has failed to show how the missing evidence is material. Armstrong was not called as a witness at trial, nor was his report entered into evidence. Estraca's trial counsel also did not cross examine Lopez, H.G., or A.V.G. about what the alleged inconsistencies in A.V.G.'s statements were. Here, we are left with just the "mere possibility" that the footage "might have helped the defense, or might have affected the

15

outcome of the trial," which "does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109–10. For instance, the inconsistent statements might not have pertained to the substance of I.G.'s outcry, but rather, some extraneous matter unrelated to the charged offense. *See id.* Without understanding the discrepancies between Armstrong's police report and Lopez's interview with A.V.G., Estraca has failed to show a reasonable probability that the outcome of the trial would have been different but for the State losing the footage. *See id.*; *Bagley*, 473 U.S. 667, 682.

Further, the record indicates that Estraca's trial counsel received comparable evidence, and the exculpatory value of the footage would have been slight when compared to the body of evidence produced a trial. *See Trombetta*, 467 U.S. at 489; *Burdick v. State*, 474 S.W.3d 17, 26–27 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (concluding that missing footage allegedly showing "appellant walking normally through the booking and intake area" of the police department after DWI arrest was not material because "value of those videos would have been slight when compared to the body of inculpatory evidence that the State was able to produce"). Counsel had access to Armstrong's police report which undisputably included details of his interview with A.V.G. and H.G. after I.G.'s initial outcry. As explained above, I.G.'s testimony was sufficient to prove each element of the offense and an audio recording of I.G.'s outcry to H.G. was admitted as evidence. We fail to see how the alleged discrepancies in A.V.G.'s statements to police would have challenged the credibility or veracity of I.G.'s testimony.

Estraca argues in the alternative that the missing footage is "potentially useful," and the State acted in bad faith because Detective Lopez "knew that the body camera

16

footage existed based on Officer Armstrong's report," yet he failed to disclose the evidence and failed to communicate the footage was missing until defense counsel requested it. He also argues that the ransomware attack does not relieve the State of its duty to disclose the footage because the attack occurred a full year after he was indicted.

"'Bad faith' is more than simply being aware that one's action or inaction could result in the loss" of evidence. *Ex parte Napper*, 322 S.W.3d at 238. "[B]ad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Id.* A showing of gross negligence or poor judgment does not qualify as bad faith. *See Youngblood*, 488 U.S. at 58; *see also Payne v. State*, No. 11-19-00298-CR, 2021 WL 4998788, at *6 (Tex. App.—Eastland Oct. 28, 2021, pet. ref'd) (mem. op., not designated for publication) ("Misjudgment is not bad faith."); *Cadriel v. State*, No. 13-14-00137-CR, 2015 WL 5634421, at *10 (Tex. App.—Corpus Christi–Edinburg Sept. 24, 2015, pet. ref'd) (mem. op., not designated for publication) ("[A] showing of negligence on the part of the police or the government is not equivalent to bad faith.").

Lopez testified that there was no footage on the department's server when he was investigating I.G.'s case. He could not remember what efforts he made to locate the footage before he submitted the discovery to the D.A.'s office in September of 2018, but he testified that he did not talk with Armstrong to try to locate the footage. Any footage was now lost because of the department's 2019 ransomware attack.

Lopez's testimony does not show bad faith on the part of the State. There is no evidence that the State intentionally destroyed the footage and attempts the State later

17

made to locate the footage was hampered by the Robstown PD ransomware attack. *See State v. Villarreal*, 692 S.W.3d 844, 850 (Tex. App.—Corpus Christi–Edinburg 2024, pet. filed) (holding that "[t]he State's inability to maintain a proper case management system and find evidence—however problematic—is not evidence of bad faith where it remains undisputed that the State does not know what happened to the lost evidence"). And, there is no evidence that Lopez had an improper motive or desire to prevent Estraca from obtaining useful evidence. *See Ex parte Napper*, 322 S.W.3d at 238; *Villarreal*, 692 S.W.3d at 851 (holding that the prosecutor's "undisputed delay in notifying Villarreal that the State had lost the evidence in the case" was not enough to show bad faith on the part of the State because the prosecutor's "delayed disclosure neither resulted in the loss or destruction of evidence" and the record showed no evidence of improper motive).

Lastly, Estraca argues that the trial court abused its discretion by denying his motion to dismiss because the State violated Texas Code of Criminal Procedure articles 2.1397 and 39.14 when it "failed to preserve, maintain, and disclose" Armstrong's bodycam footage. *See* TEX. CODE CRIM. PROC. ANN. arts. 2.1397, 39.14. Article 2.1397 places an affirmative duty on the law enforcement agency that files a case with a prosecuting office to produce all information that would be required to be produced pursuant to article 39.14. *See id.* art. 2.1397(b). Article 39.14 requires the State to "disclose to the defendant any exculpatory, impeachment, or mitigating" evidence "that tends to negate guilt or reduce punishment" of the defendant within its "possession, custody, or control." *Id.* art. 39.14(h).

18

"[T]he dismissal of an indictment is 'a drastic measure only to be used in the most extraordinary circumstances.'" *State v. Mungia*, 119 S.W.3d 814, 817 (Tex. Crim. App. 2003) (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)); *State v. Hill*, 499 S.W.3d 853, 872 n.69 (Tex. Crim. App. 2016). As this Court held recently in *Villarreal*, dismissal is not a proper remedy under article 2.1397. 692 S.W.3d at 851–52 ("Because article 2.1397 is not a mechanism for dismissal, a dismissal predicated on an article 2.1397 violation is error." (citation omitted)); *see also Martinez v. State*, No. 13-23-00059-CR, 2024 WL 5087393, at *7 n.2 (Tex. App.—Corpus Christi–Edinburg Dec. 12, 2024, no pet. h.) (mem. op., not designated for publication) ("[W]e have previously concluded that the plain text of the [Article 2.1397] is silent on its face as to the consequences of noncompliance and found no indication that a new trial would be an appropriate remedy for noncompliance." (citing *Villarreal*, 692 S.W.3d at 852)); *Black v. State*, No. 13-22-00147-CR, 2023 WL 7204472, at *7–8 (Tex. App.—Corpus Christi–Edinburg Nov. 2, 2023, pet. ref'd) (mem. op., not designated for publication).

We also held in *Villarreal* that dismissal is not a proper remedy under article 39.14 "where [the] complained-of evidence is not within the State's possession because it has been inadvertently destroyed." 692 S.W.3d at 852–53 (citations omitted)). The parties do not dispute that the complained-of lost evidence is not in the State's possession, custody, or control. *See id.* Lastly, we note that dismissal of the indictment, in this case, would be inconsistent with the express legislative purpose of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 1.03 (stating that the code "is intended to embrace rules applicable to the prevention and prosecution of offenses against the laws of this State,"

19

to "adopt measures for preventing the commission of crime," and to "exclude the offender from all hope of escape").

In conclusion, Estraca has failed to establish that the missing footage was material, that the State failed to disclose the missing evidence in bad faith, and that dismissal is an appropriate remedy under articles 39.14 and 2.1397. The trial court did not err when it denied Estraca's motion to dismiss. We overrule his second issue.

## IV. MODIFICATION

The judgment of conviction is titled "Judgment of Conviction by Jury," but the record shows Estraca's trial was a bench trial, and his punishment was assessed by the trial court. We have the authority to reform a judgment "to speak the truth" when necessary. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)); *see Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). Accordingly, we modify the trial court's final judgment to reflect that his conviction and punishment was assessed by the trial court. *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27; *French*, 830 S.W.2d at 609.

## V. CONCLUSION

The trial court's judgment is affirmed as modified.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of January, 2024.